CHARLES D. SHEEHY, administrator, vs. INHABITANTS OF
WEYMOUTH.

Norfolk.   January 16, 1929. — January 31, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Evidence*, Of value, Competency.   *Damages*, For property taken or damaged under statutory authority.

At the trial of a petition against a town for the assessment of damages caused to the petitioner by a taking of land by the respondent, it appeared that, six months before the vote authorizing the taking and thirteen months before the taking, the owner of a tract of land, which included that taken, made a plan for the purpose of developing it and selling it as house lots; that on the plan fifty-seven lots were shown; that the vote authorized the taking of lots "numbered 42 to 57 inclusive" on the plan; that about a month before the taking a street, shown on the plan, was completed.   Subject to exception by the respondent, evidence was admitted that, during six months before the taking, thirteen lots in the tract, other than those afterwards taken, were sold, four for a certain amount of cash and the rest for a payment of cash down and a balance secured by second mortgage, subject to a first construction loan mortgage executed by the purchaser, the price being stated, and that at the time of the taking all but four of the second mortgages had been paid.   *Held,* that
   (1) The purchase prices of the lots thus sold could well have been found to be an aid in determining the value of the lots taken, and were competent evidence;
   (2) The competency of the testimony was not affected by the fact that the price paid for some of the lots was paid in large part by mortgages.

PETITION, filed in the Superior Court on October 4, 1927, for the assessment of damages for land taken by the respondent under G. L. c. 79, for the building of an addition to its high school.

The petition was tried before *Macleod,* J.   Material evidence and exceptions by the respondent are stated in the opinion.   There was a verdict for the plaintiff in the sum of $9,570.   The respondent alleged exceptions.

*F. G. Bauer,* for the respondent.

*W. P. Kelley,* (*A. C. Sheehy* with him,) for the petitioner.

PIERCE, J. This is a petition for the assessment of damages for land, taken under G. L. c. 79 for school purposes.

The tract of land of which the parcel taken was a part was bought by one Michael Sheehy in June, 1925. A plan of this land was made for him, for the purpose of developing the land and selling it as house lots, on September 4, 1925. The portion taken, sixteen of the house lots, in the aggregate two and one quarter acres, is outlined in red on a copy of the plan annexed to the bill of exceptions. The parcel taken lay northerly and westerly of the high school lot. The vote of the town authorizing the taking was passed March 1, 1926, and describes the land to be taken as follows: " . . . A certain parcel of land situated in Weymouth shown as Lots numbered 42 to 57 inclusive on a plan entitled 'High School Terrace, Plan of Subdivision of Land in Weymouth, Mass.,' made by Russell H. Whiting, Civil Engineer, dated Sept. 24, 1925." The bill of exceptions further sets out a particular description of the parcel by metes and bounds, and a copy of the instrument of taking dated October 4, 1926, and recorded October 28, 1926. "The exceptions taken all relate to the question whether under the facts disclosed . . . evidence of the price at which individual house-lots of this tract of land were sold is admissible in evidence and proper for the consideration of the jury."

Academy Avenue, shown on the plan, was constructed and completed by September, 1926. Between April, 1926, and October 4, 1926, the date of the taking, thirteen lots were sold, the first on April 25 for $500, the third on May 11 for $700, and each of the remaining eleven for $600. Four of the lots were sold by Sheehy for cash. Nearly all the remaining lots were sold to one Grenier for a payment of cash down and a balance secured by second mortgage, subject to a first construction loan mortgage executed by Grenier. At the time of the taking all but four of the Grenier second mortgages had been paid. The evidence warranted the description of the transactions which was given by the presiding judge to the jury, in the words which follow: " . . . after the initial payment was made on the land, whatever sum that may have been, the owner of the land allowed the

construction mortgagee to come in under it, come in ahead of it, and then after the building loan was satisfied the owner would satisfy his obligation with respect to the remainder of the purchase price of the land, through a second mortgage."

The exceptions of the respondent to the admission of testimony as to the price paid for each lot, and to "so much of the charge as allowed the jury to consider the sale price of individual lots under the circumstances of this case" are based upon the contention "that the price that a person can get for a single house lot sold to or through a builder as part of a development scheme, where a house is built for the ultimate purchaser, who pays only a small cash deposit, and the landowner takes a second mortgage after a construction loan until the matter is refinanced on a permanent basis, is not a fair indication of the cash value of sixteen lots paid for in cash in a lump sum." In his charge the judge specifically brought this contention to the attention of the jury, and they were told that it was a "very practical consideration" to have when they were having in mind the prices paid for the individual lots. All the parcels of land sold were in the immediate vicinity of the parcels taken. It could have been found that the lots taken and the remaining parts of the entire tract bought were similar and nearly identical in respect to locality and to the uses to which they might be put. In such circumstances, the prices paid for the lots sold within the year preceding the taking could well have been found to be an aid in determining the value of the lots taken. The competency of the testimony was not affected by the fact that the price paid for the property was paid in large part by mortgages. *Fourth National Bank of Boston* v. *Commonwealth*, 212 Mass. 66.

*Exceptions overruled.*