*In re* EDWARD J. JEFFRIES HOMES HOUSING PROJECT.
APPEAL OF COLLINS.

1. Eminent Domain—Nature of Condemnation Proceedings.
   Proceedings to condemn privately-owned land for public use are inquisitorial in character.

2. Same—Function of Jury in Condemnation Proceedings.
   Under home rule city charter and according to the principles of the common law, the jury in condemnation proceedings is the judge of law and fact.

3. SAME—JURY—CONCLUSIONS—EVIDENCE—VIEW OF PREMISES—EX-PERIENCE.

The conclusions of a jury in condemnation proceedings need not be based entirely on the testimony presented to it but it may use its own judgment and knowledge from a view of the premises and its experience as freeholders.

4. SAME—SLUM CLEARANCE—PUBLIC NECESSITY—JUDICIAL NOTICE.

Judicial notice may be taken of the facts that the razing of insanitary dwellings tends to diminish the potentialities of epidemics, crime and waste, and that the destruction of slums at their focal centers prevents the spread of crime and disease to uninfected areas and enhances the physical values of the surrounding communities, public necessity for the condemnation of such dwellings not requiring that the evil be absolute.

5. SAME—HOUSING SITUATION—PUBLIC SAFETY—QUESTION FOR JURY.

Whether a housing situation may be deemed to be detrimental to the public safety or morals is a matter of common sense and sound discretion, and where the question is debatable, its determination is for the jury in condemnation proceedings.

6. SAME—REVIEW.

The conclusions of a jury in a condemnation proceeding which not only saw the witnesses and heard the testimony but also viewed the premises will not be disturbed by the Supreme Court although it might have reached a different conclusion unless there was reversible error.

7. SAME—SLUM CLEARANCE—IMPROVEMENT OF HOUSING SITUATION.

The power of eminent domain may be employed to condemn property where the purpose is to acquire property for slum clearance and to improve the housing situation.

8. SAME—HOUSING PROJECT—DESTRUCTION OF SOME DESIRABLE HOMES.

The fact that some desirable homes will be destroyed by a housing project does not affect the public character of the proceedings to condemn lands as slums can be eradicated only by the replanning of entire neighborhoods.

9. CONSTITUTIONAL LAW—HOUSING PROJECT—LIMITED INCOME OCCUPANTS.

Where the necessity of a housing project is obvious there is no violation of constitutional guaranties in limiting its direct benefits to those of moderate income as those who need only some help in securing healthful living conditions are as deserving of public aid as those who cannot contribute anything.

10. EMINENT DOMAIN—VERDICT—HOUSING PROJECT—NECESSITY.

Verdict of jury in proceeding to condemn 581 parcels of land
for a housing project, the form of which followed the statute,
determined both the necessity for the improvement as well as
for the taking of the particular properties in view of the in-
structions given it by the judge (1 Comp. Laws 1929, § 3794).

11. SAME—JUDGE'S STATEMENT TO COUNSEL—CURING ERROR—IN-
STRUCTIONS—BURDEN OF PROOF.

Statement of trial judge to an attorney for defendants in con-
demnation proceedings that it was up to him to satisfy the
jury by the preponderance of the evidence that the project
was unnecessary while erroneous did not constitute reversible
error where no objection was made thereto and error was
corrected by instruction that jury was to determine the neces-
sity from the testimony and their view of the premises, that
condemnor had burden of showing existence of a public neces-
sity and that there was no burden upon defendants to show
no necessity.

12. SAME—HOUSING PROJECT—LIMITATION FOR USE TO WHITE
FAMILIES.

Single reference during trial to statement contained in housing
commission's report that housing project for which city sought
to condemn land was the result of an effort to have a large
project for white families did not constitute reversible error
where the initiating petition did not limit the project to use
by white families and commission was still free to make a
legal use of the property.

13. MUNICIPAL CORPORATIONS—HOUSING PROJECT DESIGNED FOR USE
BY FAMILIES.

Limitation of use of proposed housing project by construction
of apartments designed for family use would not constitute
an abuse of discretion on part of city housing commission
even if it resulted in exclusion from use by single persons,
widows, bachelors and spinsters, since the preservation of a
decent family life and raising of children in a healthful
environment are proper measures.

14. EMINENT DOMAIN—HOUSING PROJECT—INSTRUCTIONS—EVIDENCE
—AMOUNT OF AWARD.

In city's condemnation proceedings to acquire 581 parcels of
land for a housing project, where trial judge instructed
jury to award compensation for the highest and best use to
which the property could be put under all circumstances,

considering its location, availability and its adaptability to business uses, that each defendant was entitled to be awarded the full, fair and complete value of his property and be put in as good condition financially as he would have found himself had the property not been taken and jury usually awarded but little more than the minimum estimate of value placed by city's experts, and all awards were within maximum and minimum amounts testified to by the experts, it was not reversible error to ask witnesses only what the "fair market value" of the parcels were, especially where counsel for appellants used the same test when examining his own witnesses.

15. SAME—FUNCTION OF JURY—VALUE—EVIDENCE—VIEW OF PREMISES.

Since the jury in condemnation proceedings are the judges of the credibility of witnesses and the truthfulness of their statements and have the benefit of the testimony as well as the examination of the property itself, their determination as to value is final and will not be disturbed as long as it is within the fair range of the testimony and facts they may have learned in examination of the property.

16. SAME—JURY—VALUE—EVIDENCE.

Determination of jury as to value of property condemned by city for housing project will not be disturbed where it is within maximum and minimum amounts as testified to by experts notwithstanding city's expert witnesses were of limited experience in the purchase and sale of type of property involved and were prone to keep the values down as defendants were not denied right of introducing testimony to show inadequacy of city's figures and difficulty some defendants might have in procuring homes comparable to those appropriated.

17. SAME—VALUE—GOOD WILL—GOING CONCERN.

The loss of good will is not an element of compensation in the condemnation of property where the business is not taken for use as a going concern.

18. SAME—PLUMBING BUSINESS CONDUCTED FROM HOME—LOSS OF GOOD WILL.

A plumber who conducted his business from his home is entitled to nothing for loss of good will because his home was taken in condemnation proceedings for a housing project.

19. SAME—SENTIMENTAL VALUE OF HOME.

Widow who had lived with her husband for many years in home now condemned with other parcels of property and neces-

sitating her removal to another residence from the proceeds of an award claimed to be wholly inadequate was not entitled to compensation for the sentimental value of the property.

20. SAME—VALUE—SIMILARITY OF COMPARABLE PROPERTIES.

Whether properties sold elsewhere and referred to by expert for city in proceedings to condemn land for a housing project in measuring the value of one appellant's property were sufficiently similar to have some bearing on the value in question rests in the sound discretion of the trial court as the term "similar" does not mean identical.

21. SAME—VALUE—TIME OF COMPARABLE SALE.

It is within the sound discretion of the trial court whether the sale of property referred to as a sale comparable to that involved in condemnation proceeding took place within a reasonable time of the proposed taking.

22. SAME—MOVING PICTURE THEATER—VALUE—EVIDENCE.

Condemnation jury's award of $18,000 to owner of moving picture theater is not disturbed on appeal where jury heard the testimony and saw the condition of the building and award is within the range of figures submitted by the witnesses notwithstanding owner claimed award should have been $27,500 and property showed a net rental of $2,722 a year.

23. SAME—TRIANGULAR SHAPED LOT—VALUE—EVIDENCE.

Condemnation jury's award of $50 for triangular lot 24.74' x 136.15' x 158' located on corner of an alley was supported by testimony where city's expert claimed it was worth only that sum, that it was of no value except to abutting owner although owner's expert claimed it was worth $350 taking into consideration the improvements such as paving, sidewalks and water.

24. SAME—COMPARABLE SALES AS EVIDENCE OF VALUE.

In proceeding by city to condemn 581 parcels of property for slum clearance and housing project, fact that city's expert witness used sales made by banks, insurance companies and trust companies after foreclosure in determining value of parcels involved did not afford a basis for disturbing jury's award where nature of sales referred to was brought out on cross-examination and jury must have formed their impression of city's expert in course of many days' appearance on the stand.

25. SAME—VALUE—CAPITALIZATION OF INCOME.

Failure of expert witness to take into consideration the income from property in determining its value for purposes of condemnation proceeding did not necessarily afford a basis for

disturbing award as capitalization of income depends upon other factors such as repairs, renovation and depreciation and other matters.

26. SAME—CONDEMNATION PROCEEDINGS—QUESTION OF NECESSITY—WAR.

Fact that declaration of war was made shortly before jury in proceedings to condemn 581 parcels of land for slum clearance and housing project rendered its verdict did not afford reason to dismiss proceedings which had been commenced 15 months previously although the subsequently imposed limitation on building might have affected the question of necessity in the jury's mind had the proceedings been begun while war was in progress.

27. COSTS—PUBLIC QUESTION—SLUM CLEARANCE AND HOUSING PROJECT.

No costs are allowed on affirmance of judgment in proceedings to condemn land for slum clearance and housing project, a public question being involved.

Appeal from Recorder's Court of Detroit; Skillman (W. McKay), J. Submitted June 16, 1943. (Docket No. 37, Calendar No. 42,394.) Decided October 11, 1943.

Petition by City of Detroit for condemnation of land for Edward J. Jeffries Homes Housing Project. Award for plaintiff. Defendant May M. Collins and others appeal. Affirmed.

*Paul E. Krause, Clarence E. Page* and *Walter E. Vashak,* for plaintiff.

*Wm. S. McDowell,* for defendants Collins and Yates.

*Sol Lumberg,* for defendant Watchmaker.

*Oscar Adelman* (*Joseph Mazer,* of counsel), for defendant Athens Company.

*Firmon Lush, in pro. per.*

*Henry C. L. Forler,* for defendant Cummings.

*Richard S. Weber* and *Edgar F. Mansfield,* for defendants Weber, Koch, Drengberg, Carvo, Martin, Bannister, Stickels, Karas, Herrmann, Mansfield, Lord, Sellars, Karahalios, Wetzel, Quigley, Peat, Miner, Paul, Chase, Dunigan, and Hoye.

*Leemon & Leemon,* for defendants Podoliak and Highland Park Development Corporation.

Butzel, J.    Certain defendants appeal from awards made in condemnation proceedings in the recorder's court of the city of Detroit to appropriate property for the Edward J. Jeffries Housing Project.   The city sought to condemn 581 parcels of property in which approximately 2,500 residents were interested.   The properties were located in two rectangular sections of an old part of the city of Detroit, the larger of the two tracts being almost diagonally across from the northwest corner of the smaller one and thus both were in proximity to each other.   No objection is made to the sufficiency of the pleadings or the drafting of the jury, but questions as to the necessity of the taking and the adequacy of the amounts awarded for the respective properties are raised on appeal by respondents owning 36 of the 581 parcels.

There is sufficient testimony in the record to show that many of the buildings in the section sought to be condemned were not suitable for residence purposes.   There were 633 structures on the property, 441 of which were erected prior to 1895, and only 16 of which were erected since 1919.   Sixty per cent. of the dwellings were termed "substandard" from the physical standpoint but there was no serious overcrowding.   Most of the lots as well as some

of the streets were short and narrow and many of the dwellings were in such close proximity to each other as to shut off the light and air from the sides. There was but little space for recreational activities for children who necessarily had to play on narrow and irregular streets. Adequate toilet and bathroom facilities were lacking in many houses. Testimony was given as to the social effects of the clearance of congested areas and how other housing projects reduced the rates of crime and disease to a very large extent. Reference was made in particular to the Brewster street project. A Detroit jury would be much impressed by this project whose new homes on spacious grounds stand out like an oasis amid the old tumbledown frame houses of the adjoining neighborhood. The jury moreover had the advantage of inspecting the entire site for the project and evidently made a careful and thorough study. After being impanelled, it spent 12 days in viewing the property, and also visited it on a number of occasions during the following 63 days of deliberations. Condemnation proceedings are inquisitorial and under the charter of the city of Detroit and according to the principles of the common law the jury is the judge of law and fact. Its conclusions need not be based entirely on the testimony but it may use its own judgment and knowledge from a view of the premises and its experience as freeholders. *In re Parkside Housing Project,* 290 Mich. 582; *In re Widening of South Dix Avenue,* 262 Mich. 233; *Ontonagon R. Co.* v. *Norton,* 236 Mich. 187; *In re Widening of Bagley Avenue,* 248 Mich. 1.

The claim is made, however, that without a specific showing of health conditions, delinquency and traffic accidents, there is no necessary relation between poor housing and the public welfare. An

exhaustive discussion of the social effects of slums is unnecessary in every case. Judicial notice may be taken of the facts that the razing of insanitary dwellings tends to diminish the potentialities of epidemics, crime and waste, and that the destruction of slums at their focal centers prevents the spread of crime and disease to uninfected areas and enhances the physical and moral values of the surrounding communities. Public necessity does not require that the evil be absolute. Whether a housing situation may be deemed to be detrimental to the public safety or morals is a matter of common sense and sound discretion, and where the question is debatable, its determination has appropriately been left to the jury. *Stockus* v. *Boston Housing Authority,* 304 Mass. 507 (24 N. E. [2d] 333). Even if we might have come to a different conclusion, the jury had the benefit not only of seeing the witnesses and hearing the testimony but also of visiting the properties and we may not disturb their conclusions unless there is reversible error.

Appellants claim that the taking of private property by eminent domain in the absence of slum clearance is not a taking for public use. We held in *Re Brewster Street Housing Site,* 291 Mich. 313, that the power of eminent domain may be employed for acquiring property for slum clearance and low cost housing. Since the jury found in the instant case that it was necessary to acquire the land for these public purposes, we need not decide whether a municipality can validly condemn property where the main purpose may be better housing but slum clearance is also involved. See *In re Brewster Street Housing Site, supra; Dornan* v. *Philadelphia Housing Authority,* 331 Pa. 209 (200 Atl. 834) ; *Allydonn Realty Corp.* v. *Holyoke Housing Authority,* 304 Mass. 288 (23 N. E. [2d] 665).

Necessity having been found, the question of whether this type of improvement is a public use becomes foreclosed by our prior decisions.

The fact that some desirable homes will be destroyed by the project does not affect the public character of the proceedings. Since slums can be eradicated only by the replanning of entire neighborhoods, the few exceptions cannot be held to change the general condition. There is no question, as counsel contend, but that the housing program provides an indirect subsidy in the form of rental below its real value to a group of tenants of limited income. But those who need only some help in securing healthful living conditions are as deserving of public aid as those who cannot contribute anything. The public is interested not only in slum clearance but also in giving healthful and moral surroundings to those with very small incomes who cannot afford to rent better homes. It will receive more than adequate return through the diminution of crime and disease and the securing of a better class of citizens. Years of experience heretofore have proven that the construction of such homes has rarely been regarded as an attractive financial investment by private capital. The necessity of the project being obvious, there is no violation of constitutional guaranties in limiting its direct benefits to those of moderate income. *Williamson* v. *Housing Authority of Augusta,* 186 Ga. 673 (199 S. E. 43).

Some of the appellants further claim that while the jury found that it was necessary to take the property, it did not find that it was necessary to make the improvement. The judge instructed the jury that if they found from the evidence presented that there was insufficient evidence to find a verdict of necessity, then the verdict must be of no neces-

sity; that in determining the question of necessity, the jury must find whether or not the project was necessary, not whether it was necessary to take the land for the proposed project; that if it found that the construction of the project at the present time was not a public necessity, the verdict must be one of "not necessary." We believe the jury was not in any way misled, and that their verdict covered both the necessity for the improvement as well as for the taking of the particular properties. The form of the verdict followed the statute, 1 Comp. Laws 1929, § 3794 (Stat. Ann. § 8.51), and was approved in *Re Widening of Harper Avenue,* 237 Mich. 684.

The trial judge did make one unfortunate remark early in the trial in stating in the presence of the jury to one of the attorneys for the defendants that it was up to him to satisfy the jury by the preponderance of the testimony that the project was unnecessary. This was clearly an erroneous statement. However, as far as the record shows, no objection was made to this statement and it is admitted by counsel for one of the appellants, who stresses the error, that the court attempted to correct this statement in his charge to the jury. He told them in no uncertain terms that they were to determine the necessity not only by what they had heard in court, but also by a view and inspection of the property; that the burden of proof was on the city to show the existence of a public necessity and that there was no burden on defendants to show no necessity. No objection having been made and the mistake having been corrected, it was not reversible error.

During the trial excerpts were read from the sixth annual report of the Detroit Housing Commission by counsel for some of the defendants over objection of an attorney for the city of Detroit. One

excerpt stated that the selection of the sites was the result of an effort to have a large project for white families.  No further reference was made to this excerpt and its unfortunate limitation is not of the least binding force.  The initiating petition did not limit the project to use by white families and the housing commission is still free to make a proper and legal use of the property if and when the project is completed.

Objection is made also to the limitation of the proposed use of the project to persons in certain sized families to the exclusion of single persons, widows, bachelors and spinsters.  Again there is nothing in the petition or the verdict embodying such restrictions.  While the proposed apartments are to be of such size as to accommodate families, the selection of tenants must be left to the sound discretion of the housing commission.  We cannot say that the discretion would be abused by measures aimed at the preservation of decent family life and the raising of children in a healthful environment.

Appellants complain that witnesses were asked only what the ''fair market value'' of the parcels were, and that this test would not cover property occupied, used and held as an investment, nor would it provide just compensation for a loss of business and good will attached thereto.  The attorney who makes this objection, however, used the ''market value'' test even when examining his own witnesses.  In *Re Widening of Bagley Avenue, supra,* 5, we stated:

''The compensation to be made is to be just.  It is the fair cash market value of the property to be taken.''

The judge in his charge further instructed the jury to award compensation for the highest and best use to which the property could be put under

all circumstances, considering its location, availability and its adaptability to business uses; that each defendant was entitled to be awarded the full, fair and complete value of his property. He further instructed them that just compensation may be defined as that amount of money which places the injured party in as good condition as he would have found himself if the property had not been taken from him. *In re Widening of Michigan Avenue, Roosevelt to Livernois,* 280 Mich. 539; *In re Widening of Bagley Avenue, supra.* While special objections are made to the inadequacy of the awards as to particular parcels, it will be found that the award in each case is within the maximum and minimum amounts testified to by the experts. *In re Widening of Michigan Avenue, Fourteenth to Vinewood,* 298 Mich. 614; *People, for the use and benefit of Regents of University of Michigan,* v. *Pommerening,* 250 Mich. 391; *Commission of Conservation of Department of Conservation* v. *Hane,* 248 Mich. 473. It is true that in most instances the jury did not award much more than the minimum estimate of value placed by the experts for the city, but there is no claim that the awards were below such estimate. Although, if the determination of the amount of the awards had been left to some of us, we might have awarded larger sums, this is not ground for reversal. The test of market value might not always correspond to the use value to the owner and in many instances the true value may be difficult to estimate, but no exact alternative measure of compensation has been found as an acceptable substitute. In *Re Widening of Michigan Avenue, Fourteenth to Vinewood, supra,* we commented upon the difficulty of determining the exact value of property by any formula. We stated that this court could not set up a formula or dictate the method

which must be followed by the jury in its determination of value. Also, see, *In re Widening of Bagley Avenue, supra.* The jury are the judges of the credibility of witnesses and the truthfulness of their statements. They have the benefit of the testimony as well as the examination of the property itself and their determination is final. The court may not disturb it as long as it is within the fair range of the testimony and the facts they may have learned in their examination of the property. In *Re Widening of Michigan Avenue, Fourteenth to Vinewood, supra.* If, as is claimed, the city's experts were of limited experience in the purchase and sale of this type of property and prone to keep the values down, defendants were not denied the right of introducing testimony to show the inadequacy of the city's figures and the difficulty some of the defendants might have in securing homes comparable with those being appropriated. We recognize the imperfections of the system but it is not within our province to change the law.

Each of the appealing defendants makes special objections. One claims that he was allowed nothing for the loss of good will in the sale of a plumbing business which he conducted from his home. The loss of good will is not an element of compensation where the business is not taken for use as a going concern. See *Banner Milling Co.* v. *State of New York,* 240 N. Y. 533 (148 N. E. 668), and cases collated in 41 A. L. R. 1026. A good plumber should be able to continue his business in almost any location and do as well as he formerly did in a neighborhood where in many homes there was a lack of adequate plumbing facilities.

A widow who had lived with her husband in a home for many years complains of being forced ruthlessly to sell her property and abandon a com-

fortable home with its many sentimental values and in her old age be obliged to seek another residence from the proceeds of an award claimed to be wholly inadequate. The law provides no compensation for the sentimental value of property. The picture of an attractive home appears in the record. However the owner of this home has not appealed.

Another appellant claims that the city's expert used the wrong yardstick in measuring the value of his property. The expert referred to the sales of similar property but of different size and in an entirely different locality. Similar does not mean identical. It is sufficient if the property referred to has a resemblance. *Wassenich* v. *City and County of Denver,* 67 Col. 456 (186 Pac. 533); *Pennsylvania Company for Insurances on Lives and Granting Annuities* v. *Philadelphia,* 268 Pa. 559 (112 Atl. 76). Much stress was put upon the range of values of the property and every effort was made to discredit the city's expert on cross-examination. Whether the properties are sufficiently similar to have some bearing on the value in question rests in the sound discretion of the trial court.

Another appellant claims that the city's expert erred in basing his valuation upon comparative sales made as far back as 1937. Appellant did not attempt to dispute the significance of the sales by proving a change in market conditions. Any jury, undoubtedly familiar with conditions since 1937 and their effect on real estate prices, would have sufficient intelligence to take this factor into consideration. *Forest Preserve District of Cook County* v. *Kean,* 298 Ill. 37 (131 N. E. 117). It is within the sound discretion of the trial court whether the sale of the property referred to took place within a reasonable time of the proposed taking. *Sheehy* v. *Inhabitants of Weymouth,* 266 Mass. 165 (164 N. E. 819).

In another instance, objection was made to the award made to the owner of a moving picture theatre which charged 10 and 15 cents for admission. The city's witness was not cross-examined. An award of $18,000 was made. Defendant claimed it should have been $27,500. The property showed a net rental of $2,722 a year. The jury heard the testimony and saw the condition of the building. The award was within the range of figures submitted by the witnesses.

Objection is made that the jury only awarded $50 for a triangular shaped lot at the corner of an alley. The city's expert claimed it was worth only $50, while the defendant claimed it was worth $350. The triangular lot is 24.74 feet wide at its base while the two other sides are 136.15 and 158 feet in length. The city's expert testified that the property was practically useless, that it was of no value except to the abutting property owner. Defendant's expert stated that taking into consideration the improvements such as paving, sidewalks and water, the fair market value was $350, and that the highest use of the property was not for residential purposes. He did not state any use to which it could be put. With a lack of any testimony showing what use could be made of the property, the jury awarded only $50. The award was supported by the testimony.

Objection is made because a witness for the city took into consideration the sales that had been made by banks, insurance companies and trust companies after foreclosure; that he did not consider such sales as forced sales; that such institutions are not in the real-estate business and it is their general policy to dispose of property as quickly as they can so as to liquidate the assets; that the general rule as to what a willing buyer would pay to a willing seller would not apply. However, this fact was

brought out on cross-examination and it must be assumed that the jury took it into consideration. They likewise must have formed their impression of the city's expert witness as they saw him for many days. Several of the appellants claim that the city's expert did not take into consideration the income from property. The expert admitted that he had heard of a rule of thumb by which property renting for $40 a month should be worth $4,000. He was asked on what basis the income was capitalized. He stated that he did not know how to figure it out. It did not take a mathematician to apply this method and the manner of computation could be easily argued before the jury. As a matter of fact capitalization of income depends upon other factors, as an old building frequently requires a large sum for repairs, renovation, et cetera. If proper depreciation is charged, its value keeps going down. However, these are questions that the jury had a right to consider. They are judges of the facts.

It is claimed, however, that the court erred in failing to instruct the jury that there was no necessity of the proposed project because of the declaration of a state of war; that the dearth of materials made the construction of the project impossible for the time being. It is claimed also that the court should have granted a new trial for that reason. The petition was filed September 16, 1940. The impanelling of the jury began February 10, 1941. The jury, after receiving the charge of the court, began its deliberations September 16, 1941. War had not then been declared. The jury deliberated over three months and rendered its verdict on December 18, 1941, shortly after war was declared. This is no reason to dismiss the proceedings or set the award aside. Undoubtedly, practical means will be

found to utilize the property acquired by the city until the project can be carried through, and the city might even permit the former occupants to remain undisturbed upon payment of fair rental based upon the awards. The limitation on building caused by the war does not constitute a sufficient reason to dismiss the proceedings, although it might have affected the question of necessity in the jury's mind had the proceedings been begun while the war was in progress. What we have said in general applies to all the objections raised by appellants in regard to their awards. We have carefully examined each award, and while in some instances we believe the amounts low, nevertheless we find no error. Other questions raised have been considered, but we find they have no merit and require no discussion.

The judgment is affirmed, without costs, a public question being involved.

Boyles, C. J., and Chandler, North, Starr, Bushnell, and Sharpe, JJ., concurred with Butzel, J. Wiest, J., concurred in the result.