**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 11, 2008

MICHIGAN DEPARTMENT OF
TRANSPORTATION,

Plaintiff-Appellant,

v                                                                       No. 132983

RODNEY TOMKINS and DARCY
TOMKINS,

Defendants-Appellees.

_____

BEFORE THE ENTIRE COURT

YOUNG, J.

This case involves a partial taking of defendants' property in connection
with the construction of the M-6 highway. We are asked in this case to examine
the scope of damages permitted under the phrase "just compensation" in article 10,
§ 2 of the 1963 Michigan Constitution. In addition to the fair market damages
associated with the land taken, defendants also sought damages associated with the
dust, dirt, noise, and related general effects of the M-6 project. However, the

Uniform Condemnation Procedures Act (UCPA)[1] specifically excludes compensation for the "general effects" of a project for which property is taken that are experienced by the general public or by property owners from whom no property is taken.[2] The circuit court excluded general effects damages but the Court of Appeals reversed, holding that the UCPA's limitation on damages was unconstitutional because it conflicted with the established constitutional meaning of "just compensation."

Given the paucity of evidence indicating that, before 1963, those sophisticated in the law understood that just-compensation damages included "general effects" damages and contrary indications from pre-1963 caselaw and secondary sources, we conclude that the presumption of the constitutionality of MCL 213.70(2) has not been overcome and hold that it is constitutional. Thus, the circuit court properly relied on MCL 213.70(2) to exclude evidence of "general effects" damages attributable to the M-6 highway. We reverse the Court of Appeals and remand to the circuit court for further proceedings consistent with this decision.

## I. FACTS AND PROCEDURAL HISTORY

In connection with its construction of the M-6 limited-access freeway serving southern portions of Kent County, plaintiff Michigan Department of

---

[1] MCL 213.51 *et seq.*

[2] MCL 213.70(2).

Transportation (MDOT) determined that it was necessary to condemn a portion of defendants' two-acre parcel fronting Kenowa Avenue. The M-6 project called for MDOT to construct several bridge overpasses to accommodate existing roads such as Kenowa Avenue that would otherwise have been interrupted by the new freeway. MDOT estimated that it was necessary to take a portion of defendant's land, approximately 49 feet by 120 feet, in order to construct the elevated overpass at Kenowa.

After defendants rejected MDOT's offer of $4,200 for the strip of land, MDOT initiated a condemnation action under the UCPA in July 2001.[3] Experts for both parties agreed that the strip of land had a fair market value of $3,800. However, defendants also sought an additional $48,200 in damages to the remaining property that defendants' appraiser attributed to the "dust, dirt, noise, vibration, and smell" of nearby M-6.

On January 23, 2004, MDOT filed a motion in limine or, in the alternative, a motion for summary disposition under MCR 2.116(C)(8) seeking to exclude any evidence of the "general effects" damages. Because the parties' experts agreed on the fair market value of the condemned property, MDOT argued it was entitled to summary disposition if the "general effects" evidence was excluded. In March

[3] MDOT also named Byron Center State Bank and Chase Mortgage as defendants. However, they were later dismissed with prejudice by the circuit court's May 2004 final judgment, which stated that these parties "shall not receive any compensation or other amounts arising out of MDOT's acquisition of property in this proceeding." They are not part of this appeal.

2004, the circuit court granted MDOT's motion, relying on MCL 213.70(2), and later entered a final judgment awarding defendants $3,800 as full compensation for the taking as well as statutory attorney fees and interest.

The Court of Appeals reversed the circuit court, holding that the exclusion of "general effects" damages in MCL 213.70(2) was unconstitutional because it impermissibly conflicted with the established constitutional meaning of "just compensation."[4] The panel concluded that "*any* and *all* factors relevant to market value [must] be taken into consideration when determining the difference in the remaining property's value before and after the taking."[5]

In addition, the panel, citing *Campbell v United States*,[6] and decisions from other jurisdictions interpreting *Campbell*,[7] held that in a partial taking, "'[w]here the use of the land taken constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put, the effect of the whole improvement is properly to be considered in estimating the depreciation in value of the remaining land.'"[8] The Court of Appeals remanded to the circuit court to

---

[4] *Dep't of Transportation v Tomkins*, 270 Mich App 153, 166; 715 NW2d 363 (2006).

[5] *Id.*

[6] 266 US 368; 45 S Ct 115; 69 L Ed 328 (1924).

[7] *Andrews v Cox*, 129 Conn 475; 29 A2d 587 (1942); *City of Crookston v Erickson*, 244 Minn 321; 69 NW2d 909 (1955).

[8] *Tomkins*, 270 Mich App at 168, quoting *Andrews*, 129 Conn at 482.

evaluate whether the overpass construction was "integral and inseparable" to the M-6 project. On remand, the circuit court found that a question of fact existed regarding this issue. Consequently, the Court of Appeals again remanded to the circuit court "to allow the trier of fact to consider the experts' testimony regarding the proper just compensation for the diminution in value of the remainder (that is, the portion of the Tomkins parcel left over after the government taking) that takes into account all relevant factors affecting its market value." It subsequently denied MDOT's motion for reconsideration.

MDOT filed an application for leave to appeal, which this Court granted.[9]

## II. STANDARD OF REVIEW

Questions of constitutional interpretation and statutory interpretation are questions of law reviewed de novo by this Court.[10] This Court also reviews de

---

[9] 478 Mich 903 (2007). The order granting leave to appeal, in addition to inviting amici to move for leave to file briefs, asked the parties to address:

(1) what was the ratifiers' common understanding of the phrase "just compensation" when they ratified Const 1963, art 10, § 2, and was it commonly understood that "just compensation" in inverse condemnation cases was different than "just compensation" in direct, partial taking cases; and (2) whether § 20(2) of the Uniform Condemnation Procedures Act, MCL 213.70(2), impermissibly conflicts with this established meaning of "just compensation." [*Id.*]

[10] *Co Rd Ass'n of Michigan v Governor*, 474 Mich 11, 14; 705 NW2d 680 (2005); *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

novo a trial court's decision to grant a motion for summary disposition.[11]

## III. RULES OF STATUTORY AND CONSTITUTIONAL INTERPRETATION

It is axiomatic that statutory language expresses legislative intent. "A fundamental principle of statutory construction is that 'a clear and unambiguous statute leaves no room for judicial construction or interpretation.'"[12] Where the statute unambiguously conveys the Legislature's intent, "the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case."[13] Statutes are presumed constitutional, and this Court exercises the power to declare a law unconstitutional with extreme caution, never exercising it where serious doubt exists with regard to the conflict.[14]

When interpreting our state constitution, this Court seeks the original meaning of the text to the ratifiers, the people, at the time of ratification.[15]

---

[11] *Perry v Golling Chrysler Plymouth Jeep, Inc*, 477 Mich 62, 65; 729 NW2d 500 (2007).

[12] *In re Certified Question (Kenneth Henes Special Projects Procurement v Continental Biomass)*, 468 Mich 109, 113; 659 NW2d 597 (2003), quoting *Coleman v Gurwin*, 443 Mich 59, 65; 503 NW2d 435 (1993).

[13] *In re Certified Question*, 468 Mich at 113.

[14] *Phillips v Mirac, Inc*, 470 Mich 415, 422; 685 NW2d 174 (2004).

[15] *Wayne Co v Hathcock*, 471 Mich 445, 468; 684 NW2d 765 (2004).

Technical legal terms must be interpreted in light of the meaning that those sophisticated in the law would have given those terms at the time of ratification.[16]

## IV. ANALYSIS

In *Silver Creek*, this Court observed that the doctrine of eminent domain, the power of the government to take private property for a public use and with just compensation, is firmly established in both our federal and state constitutions.[17] Dating back to the earliest days of statehood, Michigan's various constitutions, including the most recent 1963 iteration, have reserved this power to the state.[18]

---

[16] *Silver Creek Drain Dist v Extrusions Div, Inc*, 468 Mich 367, 376; 663 NW2d 436 (2003).

[17] *Id.* at 374.

[18] Every Michigan Constitution has included a provision requiring just compensation for a taking. While Michigan was still a territory, its 1835 Constitution stated that "[t]he property of no person shall be taken for public use, without just compensation therefor." Const 1835, art 1, § 19. This provision carried forward into statehood. See Const 1850, art 18, § 14 ("The property of no person shall be taken for public use without just compensation therefor."); see also Const 1908, art 13, § 1 ("Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law.").

Under the 1850 and 1908 constitutions, the necessity of the taking and the compensation were to be determined by a jury of 12 freeholders. The 1908 Constitution also allowed for a panel of commissioners to resolve these questions. See, e.g., Const 1850, art 18, § 2 ("When private property is taken for the use or benefit of the public, the necessity for using such property, and the just compensation to be made therefor, except when to be made by the state, shall be ascertained by a jury of twelve freeholders . . . or by not less than three commissioners, appointed by the court of record, as shall be prescribed by law ....); Const 1908, art 13, § 2 ("When private property is taken for the use or

(continued…)

7

Const 1963, art 10, § 2 states, in relevant part, that "[p]rivate property shall not be taken for public use without just compensation . . . ."

The Legislature enacted the UCPA in 1980 to make uniform the statutes that govern the exercise and procedure of eminent domain. Consistent with the constitutional mandate to award "just compensation," the UCPA similarly demands that individuals receive "just compensation" when their property is taken by the government.[19] When we interpret the UCPA in light of art 10, § 2, we must remember that "to the degree the Constitution has been construed to outline the nature of 'just compensation,' the statute must be similarly construed because no act of the Legislature can take away what the Constitution has given."[20] Thus, the Legislature, through the UCPA or any other statute, cannot lower the constitutional minimum of "just compensation" established by the people who ratified the 1963 constitution.

(…continued)

benefit of the public, the necessity for using such property and the just compensation to be made therefor, except when to be made by the state, shall be ascertained by a jury of 12 freeholders residing in the vicinity of such property, or by not less than 3 commissioners appointed by a court of record as shall be prescribed by law . . . . "). This language was not carried forward into Const 1963, art 10, § 2.

Also, Michigan voters approved a 2006 ballot proposal that amended Const 1963, art 10, § 2. However, the amendment, passed after the condemnation suit was initiated in this case, is not applicable to the constitutional question presented here.

[19] MCL 213.55(1).

[20] *Silver Creek*, 468 Mich at 374.

In *Silver Creek*, we recognized that the phrase "just compensation" cannot be interpreted "merely by a careful reading of the phrase."[21] Indeed, this Court has held that "the *whole* of art 10, sec 2 has a technical meaning that must be discerned by examining the 'purpose and history' of the power of eminent domain."[22] "Just compensation" falls into the category of words and phrases that is not capable of definition merely by reference to a dictionary. Rather, it is a phrase freighted with constitutional significance in our jurisprudence, specifically in the law of eminent domain. Thus, we concluded in *Silver Creek* that, as a technical legal term of art, we are required to give the phrase "just compensation" the same meaning given by those sophisticated in the law when 1963 Const, art 10, § 2 was ratified in 1963.[23] However, we cautioned elsewhere that arriving at a fixed meaning of "just compensation" before 1963 is complicated by the reality that in the past this phrase was "a legal term of art of enormous complexity."[24] The aptness of this observation is self-evident in this case.

The provision of the UCPA at issue in this case is MCL 213.70, which sets out the process for determining fair market value. It was amended by the

---

[21] *Id*. at 375.

[22] *Hathcock*, 471 Mich at 471 (emphasis in original).

[23] *Silver Creek*, 468 Mich at 376.

[24] *Hathcock*, 471 Mich at 470.

Legislature in 1996, and the amendment, among other revisions, added subsection 2. This subsection states:

> The general effects of a project for which property is taken, whether actual or anticipated, that in varying degrees are experienced by the general public or by property owners from whom no property is taken, shall not be considered in determining just compensation. A special effect of the project on the owner's property that, standing alone, would constitute a taking of private property under section 2 of article X of the state constitution of 1963 shall be considered in determining just compensation. To the extent that the detrimental effects of a project are considered to determine just compensation, they may be offset by consideration of the beneficial effects of the project.

MCL 213.70(2) separates the "general effects of a project for which property is taken" from a "special effect of the project" on the property that on its own would constitute a taking under art 10, § 2. Under the statute, "general effects" damages are "not [to] be considered in determining just compensation."[25]

In this case, if the statute were applied to the partial taking of defendants' property, defendants could not be compensated for the "dust, dirt, noise, vibration, and smell" created by M-6. These are general effects of the construction of M-6 that, in varying degrees, are experienced by the general public and property owners from whom no property has been taken. For example, any one of defendants' neighbors whose property was not taken to construct M-6 would experience the same general effects of M-6 as defendants. We must decide

---

[25] The statute also permits the detrimental effects of the project to be offset by the project's beneficial effects to determine just compensation.

10

whether the Legislature's exclusion of these "general effects" damages contravenes the constitutional minimum of just compensation established by Const 1963, art 10, § 2.

The Court of Appeals described the basic rule of damages in a partial taking as the value of the property taken plus the remaining portion's decrease in value that is attributable to the use made of the property taken.[26] It held that the decrease or diminution in value of the remaining portion is determined by calculating the difference between the fair market value of the remaining property before and after the taking.[27] In order to do this, the panel held that this Court's precedent required that "'*any* evidence that would tend to affect the market value of the property as of the date of condemnation is relevant . . . .'"[28] The Court of Appeals concluded that this broad, inclusive method of calculating the remaining parcel's diminished fair market value must take into consideration the general effects of the project for which the property was taken.

Defendants and their supporting amici curiae likewise focus their attention on language in this Court's decisions before 1963 indicating that in a partial taking the "decreased value of the residue of the parcel on account of the use made of the

---

[26] *Tomkins*, 270 Mich App at 159, citing *In re Widening of Fulton Street*, 248 Mich 13, 20-21; 226 NW 690 (1929).

[27] *Tomkins*, 270 Mich App at 159, citing *Dep't of Transportation v Sherburn,* 196 Mich App 301, 305; 492 NW2d 517 (1992).

[28] *Tomkins*, 270 Mich App at 159-160, quoting *Dep't of Transportation v VanElslander*, 460 Mich 127, 130; 594 NW2d 841 (1999) (emphasis in original).

11

land taken is also allowable as compensation."[29]  Under this pre-1963 formula for damages in a partial taking, defendants contend that the "use made of" their condemned strip of land was the construction of the M-6 highway, which included the Kenowa Avenue overpass.  Defendants reason that they are entitled to compensation for the decreased value of the remainder of their property attributable to the dust, noise, vibration, smell, and similar disturbances created by M-6.

The Court of Appeals also held that there is a distinction between liability in inverse condemnation cases[30] and damages in direct, partial condemnation cases.  In *Spiek v Dep't of Transportation*,[31] this Court held that "[t]he right to just compensation, in the context of an inverse condemnation suit for diminution in value caused by the alleged harmful affects [sic] to property abutting a public highway, exists only where the landowner can allege a unique or special injury, that is, an injury that is different in kind, not simply in degree, from the harm

---

[29] *In re Widening of Michigan Ave, Roosevelt to Livernois (Parcel 68)*, 280 Mich 539, 548-549; 273 NW 798 (1937) (citations omitted); see also *In re Widening of Bagley Avenue*, 248 Mich 1, 5; 226 NW 688 (1929).

[30] See *Electro-Tech, Inc v H F Campbell Co*, 433 Mich 57, 88-89; 445 NW2d 61 (1989) ("An inverse or reverse condemnation suit is one instituted by a landowner whose property has been taken for public use 'without the commencement of condemnation proceedings.'  Under Michigan law, a 'taking' for purposes of inverse condemnation means that governmental action has permanently deprived the property owner of any possession or use of the property.") (Internal citation omitted).

[31] 456 Mich 331, 348; 572 NW2d 201 (1998).

suffered by all persons similarly situated." The Court of Appeals declined to apply the rule of *Spiek* to this case because it held that *Spiek* was carefully limited to inverse condemnation cases where there had been no direct or physical invasion of the landowner's property.[32] In addition, the panel declined to follow the reasoning of *State v Schmidt*,[33] a Texas Supreme Court case cited in *Spiek* that rejected the argument that damages are different in inverse and direct condemnation cases, noting that many other states had reached a conclusion opposite the Texas Supreme Court.[34]

The Court of Appeals also distinguished *In re Petition of State Hwy Comm'r* (*State Hwy Comm'r v Busch)*,[35] which MDOT claimed was crucial to grasping the pre-1963 understanding of "just compensation." The *Busch* Court, citing *Campbell v United States*,[36] stated that "[t]he general rule applied when part

---

[32] *Tomkins*, 270 Mich App at 162-163.

[33] 867 SW2d 769 (Tex, 1993).

[34] *Tomkins*, 270 Mich App at 164-166.

[35] 326 Mich 183; 40 NW2d 111 (1949).

[36] 266 US 368, 45 S Ct 115, 69 L Ed 328 (1924). In *Campbell*, the United States government took possession of 1.81 acres belonging to Campbell's roughly 70-acre parcel that would be part of a proposed federal nitrate plant. The government took possession of a number of parcels to accumulate the needed 1,300 acres for the plant. After erecting a few buildings and other miscellaneous structures, the government abandoned the project. The Supreme Court held that Campbell was not entitled to damages to his remaining property that were due to the acquisition of adjoining lands belonging to others. It held that "[t]he rule supported by better reason and the weight of authority is that the just

(continued…)

13

of a parcel of land is condemned is that just compensation does not include the diminution in the value of the remainder caused by the acquisition of the adjoining lands of others for the same undertaking."[37] The *Busch* Court held that property owners could not be compensated for the effect of the taking of their neighbors' property on their remaining parcel even though the property was taken for the same road construction project.[38] The Court of Appeals below distinguished *Busch* on the basis that defendants were not directly claming damages from the taking of their neighbor's land but, rather, for the diminution of value to their own property caused by the partial taking of their property for the M-6 freeway.[39]

After considering the Court of Appeals' reasons for ruling that MCL 213.70(2) is unconstitutional, we are persuaded that it erred. First, the rule on which the Court of Appeals relied is no more than a statement of general principles. It is true that a guiding principle when awarding just compensation in a condemnation suit is to "neither enrich the individual at the expense of the public nor the public at the expense of the individual" but to leave him "in as good a

---

(…continued)
compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for public use, does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking." *Id.* at 372.

[37] *Busch*, 326 Mich at 189.

[38] *Id*. at 188.

[39] *Tomkins*, 270 Mich App at 163. The Court of Appeals refers to *Busch* as *In re Ziegler*.

14

position as if his lands had not been taken."[40] Thus, in a partial taking, the formula

to calculate the fair market value of the remainder parcel must account for the fact

that damages will vary from case to case, depending on the unique circumstances

of each taking. Restoring the individual to his position before the taking will

require a flexible, case-by-case approach to damages.

However, mere recitation of these principles calling for flexibility does not

settle the matter.[41] The particular question posed here is whether those

sophisticated in the law in 1963 relied on these principles to include "general

effects" damages in a just compensation award. The reality is that there is a

paucity of pre-1963 Michigan caselaw that definitively establishes a clear answer

to this question.[42] A pregnant fact acknowledged by the parties is that there is no

---

[40] *In re State Hwy Comm'r*, 249 Mich 530; 229 NW 500 (1930).

[41] The Court of Appeals also cited caselaw decided by this Court and the Court of Appeals after 1963, which is not helpful to determining the ratifiers' common understanding except to the extent that the cases cited and relied on pre-1963 caselaw.

[42] This Court has held that the Address to the People and the constitutional convention debates are at times relevant to determining the meaning of particular provisions to the ratifiers. *Studier v Michigan Pub School Employees' Retirement Bd*, 472 Mich 642, 655-656; 698 NW2d 350 (2005); *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). The Address to the People stated that the decision to eliminate the procedures for eminent domain proceedings found in the 1908 constitution "clearly indicates that proper procedures for the acquisition of private property for public use are to be determined by the legislature and that compensation for such property must be determined in proceedings in a court of public record." In addition, the convention delegates' rejection of a proposal to *broaden* the scope of eminent domain to property that was either "taken *or damaged*" suggests that the ratifiers did not intend to alter the state of Michigan's

(continued…)

15

indication in any reported Michigan case that "general effects" damages were ever awarded before 1963.[43]

Defendants and their supporting amici curiae cite numerous cases that they argue support the proposition that "general effects" damages were compensable before 1963.[44] These cases state many of the general principles for awarding just

---

(…continued)

pre-1963 eminent domain jurisprudence. 2 Official Record, Constitutional Convention 1961, pp 2580-2602. However, neither of these points sheds much light on the question whether "general effects" damages fall within the pre-1963 established definition of "just compensation." Thus, resort to either of these interpretive aids is of limited value.

[43] One amicus suggests the absence of caselaw on this question is due to the fact that, under earlier constitutions and condemnation statutes, the condemning agency was permitted to discontinue the taking before confirmation of the verdict. See *Detroit v Empire Dev Co*, 259 Mich 524, 526; 244 NW 150 (1932). If the just compensation award was excessive, it was routine practice, according to amicus, for the condemning agency simply to walk away or find another way to accomplish the project. Thus, amicus speculates that an excessive award, particularly one involving "general effects" damages, would rarely be the subject of an appeal. However, in the absence of any reported pre-1963 cases explicitly addressing the availability of "general effects" damages, a contrary conclusion that "general effects" damages were never recoverable is equally plausible.

[44] See, e.g., *Port Huron & S-W R Co v Voorheis*, 50 Mich 506; 15 NW 882 (1883); *Barnes v The Michigan Air Line R*, 65 Mich 251; 32 NW 426 (1887); *Grand Rapids, L & D R Co v Chesebro*, 74 Mich 466; 42 NW 66 (1889); *Comm'rs of Parks and Boulevards of Detroit v Moesta*, 91 Mich 149; 51 NW 903 (1892); *Comm'rs of Parks and Boulevards of Detroit v Chicago, D & C Grand Trunk Junction R Co*, 91 Mich 291; 51 NW 934 (1892); *Fitzsimons & Galvin, Inc v Rogers*, 243 Mich 649; 220 NW 881 (1928); *Johnstone v Detroit, GH & M R Co*, 245 Mich 65; 222 NW 325 (1928); *In re Widening of Bagley Avenue*, 248 Mich 1; 226 NW 688 (1929); *In re State Hwy Comm'r*, 256 Mich 165, 239 NW 317 (1931); *In re Dillman*, 256 Mich 654; 239 NW 883 (1932); *In re Widening of Michigan Avenue, Roosevelt to Livernois (Parcel 68)*, 280 Mich 539; 273 NW 798 (1937); *In re Widening of Michigan Avenue (Rott's Appeal)*, 299 Mich 544; 300

(continued…)

16

compensation in a partial taking cited by the Court of Appeals that we have already mentioned. However, none of these cases explicitly endorses the principle that "general effects" damages are compensable in a partial taking. Instead, these cases appeared to focus on diminution or severance damages that were specific and unique to the remaining parcel, and not effects that were felt generally by the public.[45]

---

(…continued)
NW 877 (1941); *In re Grand Haven Hwy*, 357 Mich 20; 97 NW2d 748 (1959); *State Hwy Comm'r v Eilender*, 362 Mich 697; 108 NW2d 755 (1961).

[45] For instance, in *Voorheis,* 50 Mich at 512-513*,* this Court set aside a just compensation award that did not take into consideration the effect of the partial taking on the remainder of the owner's homestead where the homestead consisted of both the lot subject to the taking and several contiguous lots from which no property was taken. In *Barnes,* 65 Mich at 253, this Court held that landowners could not file a nuisance action based on a taking of property for which they had already received just compensation where the railroad took no action inconsistent with the original purpose of the taking. In *Moesta,* 91 Mich at 155, we held that the property owner was entitled to recover for loss occasioned by the interruption of its business. In *Chicago, D & C*, 91 Mich at 293, we held that the question whether land used for warehouse purposes was less valuable due to the taking should have been submitted to the jury. In *Johnstone,* 245 Mich at 84-85, this Court held that where a taking violates or destroys a negative easement, the landowner is entitled to nominal damages for destruction of the easement and diminishment in value of the premises as a result of the use for which the property is taken. In *In re Bagley Ave,* 248 Mich at 6-7, we held that the jury was properly instructed that it could award damages to reconstruct the remaining portions of buildings partially taken by the city. In *In re Widening of Michigan Avenue,* 280 Mich at 551-552*,* this Court upheld a just compensation award that was given in part to a lessee of the condemned property. In *In re Grand Haven Hwy,* 357 Mich at 26-32*,* this Court upheld a just compensation award that took into account that the property owner was forced to move its entire facility to a new location as a result of the taking.

(continued…)

17

One amicus curiae supporting defendants cites *State Hwy Comm'r v Schultz,*[46] as an example of "general effects" damages being awarded in a partial taking case before 1963. According to this Court's opinion, $300 of a $64,042.37 just compensation award was attributed to "noise and disturbance."[47] The amicus argues that this brief mention of an award for "noise and disturbance" proves that before 1963 "general effects" damages were awarded routinely in partial takings.

We disagree with amicus that this is compelling evidence on which we could rest a conclusion that MCL 213.70(2) is unconstitutional. *Schultz* focused on the question whether the just compensation award was erroneous because the jury took into consideration the existence of sand and gravel deposits on the land when the property had been used for farming purposes. This Court affirmed the award on the ground that it was supported by the evidence that the highest and best use of the property was for a gravel pit and that the amount and value of the available mineral deposits were relevant factors for the jury to consider. Certainly the loss of the value of the mineral deposits was a specific injury to the property.

_____

(…continued)

In short, all these cases were either inapposite to the issue in this case or they reviewed just compensation awards that did not include "general effects" damages but, rather, included damages that were specific and unique to the property subject to the partial taking.

[46] 370 Mich 78; 120 NW2d 733 (1963).

[47] *Id.* at 83.

18

*Schultz* is a fragile foundation on which to rest the alleged unconstitutionality of

MCL 213.70(2).[48]

Second, we disagree with the Court of Appeals interpretation of *Spiek*. The

Court of Appeals relied on two scholarly articles to conclude that liability in

inverse condemnation and direct, partial condemnation cases is necessarily

different and that the rule of damages from *Spiek* must be limited to the former.[49]

One problem with the panel's conclusion is that *Spiek* likely addressed only

---

[48] Also, defendants' reliance on pre-1963 language that property owners in a partial taking are entitled to compensation for the "use made of the land taken" does not prove that just compensation for that use would include "general effects" damages. The "use made of the land taken" could cause damage to the remaining property that is unique to that property and has nothing to do with general effects felt by the public.

[49] Pesick, *Eminent domain: Calculating just compensation in partial taking condemnation*, 82 Mich B J 37-38 (2003) (citing 2A *Nichols on Eminent Domain* § 6.08[2] [rev ed 1993] and *Silver Creek* to conclude that "any attempt to employ [inverse condemnation's rule of liability in an actual taking] conflicts with the established meaning of constitutional 'just compensation' that requires property owners to be compensated for the difference in a property's value before and after the taking, and runs headlong into the Michigan Supreme Court's requirement that just compensation must take into account 'all factors relevant to market value.'"); Ackerman & Yanich, *Just compensation and the framers' intent: A constitutional approach to road construction damages in partial taking cases*, 77 U Det Mercy L R 241, 254 (2000) (asserting that "[b]ecause the court in *Spiek* was careful to limit its holding to cases not involving a direct or physical invasion of a landowner's property, the ruling has no applicability to eminent domain cases involving partial takings. Thus, *Spiek* does not abrogate the general rule regarding recovery of severance damages so as to require that damages be 'different in kind' from those suffered by other nearby landowners in order to be compensable."). The Ackerman article cited two pre-1963 decisions, *Rogers, supra*, and *Fulton Street, supra*, for the general rule of damages in partial taking cases. None of these supports a clear basis for recovery of "general effects" damages in partial takings before 1963.

inverse condemnation claims because that was the specific claim brought by the plaintiff. That the holding in *Spiek* was limited in that respect does not mean that those sophisticated in the law before 1963 applied a separate rule of damages for an actual, partial taking. As noted below, there is some counter-indication that the rule of damages in *Spiek* was not limited only to inverse condemnation cases.[50]

There is no dispute that an inverse condemnation claim and an actual, partial taking differ in form. An inverse condemnation claim is not initiated by the government entity under the UCPA because it has not appropriated a property interest for public use. Thus, the property owner must establish that the government's actions amounted to a constitutional "taking" of property. In an actual taking, liability for the taking has been conceded and the question is one of damages or "just compensation." However, despite these formal differences, our review of pre-1963 caselaw does not suggest that "general effects" damages were

---

[50] Also, the panel's observation that a number of other states have recognized a distinction between damages in these two types of cases, and its decision to favor those jurisdictions, is unhelpful where other states' eminent domain provisions are sometimes worded differently. For instance, the Court of Appeals cited *City of Crookston v Erickson*, 244 Minn 321, 325; 69 NW2d 909 (1955), for the rule that "it is sufficient that the damage is shown to have been caused by the taking of part of [the] property even though it is damage of a type suffered by the public as a whole." However, Minnesota's Constitution states in article 1, § 13, that "private property shall not be taken, *destroyed or damaged* for public use without just compensation therefor, first paid or secured." (Emphasis added). Const 1963, art 10, § 2 does not require just compensation where private property is destroyed or damaged without a taking. As noted in n 38, *supra*, the delegates to the 1961 Constitutional Convention declined to add this type of broad language to Michigan's eminent domain provision.

treated differently in an actual, partial taking and an inverse condemnation case. Indeed, as discussed below, there is some evidence that this Court applied principles from inverse condemnation to direct, partial takings cases before the 1963 constitution was ratified.[51] Thus, although we do not necessarily rely on *Spiek* to uphold MCL 213.70(2), we disagree with the Court of Appeals conclusion that the rule of *Spiek* does not apply to partial takings.

Further, unlike the Court of Appeals, we find *Busch, supra,* helpful in answering whether MCL 213.70(2) is constitutional. *Busch* was decided before 1963 and certainly informed the understanding of those sophisticated in the law. The *Busch* Court denied the property owners compensation for "the diminution in value of the remainder caused by the acquisition of the adjoining lands of others for the same undertaking."[52] *Busch* reflected a commonsense limitation on damages in a partial taking that a property owner is not entitled to consequential damages arising from the taking of *another* individual's property. Thus, to the extent that MCL 213.70(2) precludes "general effects" damages in a partial taking of defendants' property arising from the acquisition of neighboring property for the M-6 freeway, it is entirely consistent with the pre-1963 common understanding of "just compensation" informed by *Busch*.

---

[51] *State Hwy Comm'r v Watt*, 374 Mich 300, 314; 132 NW2d 113 (1965) (partial taking case citing *Buhl v Fort Street Union Depot Co*, 98 Mich 596 [1894], an inverse condemnation case).

[52] *Busch*, 326 Mich at 189.

We find additional guidance from this Court's plurality decision in *State Hwy Comm'r v Watt*,[53] an instance where a particular type of "general effect" damage—diminution in value attributable to the diversion of traffic—was held to be not compensable under the 1908 Constitution.[54]  In *Watt*, the state highway commission took a strip of land on the east side of Watt's property for highway purposes.  The existing highway ran along the west side and northwest corner of Watt's property where he operated a motel.  Watt argued that as part of his just compensation he was entitled to the diminution in value of his remaining property attributable to the diversion of traffic from the old US-131, and from his motel, to the new US-131.  The trial court declined to confirm the award that had compensated Watt for traffic diversion.  This Court affirmed the trial court in a four-to-three decision.  Chief Justice Kavanagh authored the opinion, joined by Justices Smith and O'Hara, holding that damages for diversion of traffic were not compensable in a partial taking.[55]  The opinion, quoting at length from a dissenting opinion in a Kansas Supreme Court case that decided a similar issue, concluded that "'"[t]he change in traffic flow in such a case is the result of the exercise of the

[53] 374 Mich 300; 132 NW2d 113 (1965).

[54] The Ackerman article cited by the Court of Appeals acknowledged *Watt* as a case where this Court held that diminution in value due to traffic diversion was not compensable but limited it as the sole exception to the rule.

[55] Justice Black concurred in the result.  Thus, although a majority of this Court agreed on the result, only three justices agreed on a rationale.  Justice Kelly authored a dissenting opinion joined by Justices Dethmers and Souris.  Justice Adams did not participate.

22

police power or the incidental result of a lawful act, and is not the taking or damaging of a property right.'"'"[56]

Justice Kavanagh's opinion also addressed the possibility that the state highway commission would later build a cul-de-sac near Watt's property and potentially cut off highway access. Regarding whether the possible construction of the cul-de-sac would presently entitle Watt to additional damages, Justice Kavanagh wrote:

> The Fifth Amendment to the Federal Constitution and article 13 of the Michigan Constitution of 1908, under which appellants here claim a remedy, proscribe the taking of *private property* without just compensation. Compensable injury arises under those provisions, therefore, only from a taking of *property rights*.
>
> From a reading of the cases dealing with the problem, it is observed that the property-right injury to be found and redressed in cul-de-sac situations is the entire or material cutting-off of the access, of an abutting owner, to the general system of highways. *As will be noted later, it is only on that basis that an abutting owner can properly make the necessary claim of special damage,* i.e., *damage not incurred, in the same, greater or lesser degree, by the general public*.[57]

In view of defendants' claim that those sophisticated in the law before 1963 uniformly believed that "general effects" damages were compensable in a partial

---

[56] *Watt*, 374 Mich at 311, quoting *Riddle v State Hwy Comm'n*, 184 Kan 603, 620; 339 P2d 301 (1959), quoting *State, ex rel Merritt v Linzell*, 163 Ohio St 97, 104; 126 NE2d 53 (1955).

[57] *Watt*, 374 Mich at 312 (emphasis added).

taking, *Watt* undercuts that thesis.[58]   Moreover, there is an important similarity between a claim of damages for the diversion of traffic and a claim of damages for the "dust, dirt, noise, vibration, and smell" caused by a highway.   Both are "general effects" damages felt by the general public that are incidental to the building of a highway.

Furthermore, in the absence of strong primary authority establishing a right to "general effects" damages in partial takings before 1963, a useful secondary source to which we turn to understand the pre-1963 meaning of "just compensation" is the scholarly writings of our venerable Michigan Supreme Court Justice Thomas M. Cooley.   Justice Cooley noted the general rule that when the government undertakes a public work, there is no right to compensation if no legal right has been appropriated in the process:

> It is a general rule, however, that the mere fact that one suffers incidental loss in consequence of the undertaking and construction of a public work, where nothing to which he has a legal right is actually appropriated, can never give him a claim to compensation.[59]

---

[58] Although *Watt* was a plurality decision, its holding that diversion of traffic is not an element of damages in condemnation proceedings was reaffirmed by a clear majority of this Court in *State Hwy Comm'r v Gulf Oil Corp*, 377 Mich 309, 315; 140 NW2d 500 (1966), a case decided under the 1963 constitution.

[59] 1 Cooley, The General Principles of Constitutional Law in the United States of America (1880), p 337.

Thus, according to Justice Cooley, where there is such "incidental loss," it is

*damnum absque injuria*—loss without injury.[60]

> However, in a partial taking, Justice Cooley wrote that "just compensation"
>
> may perhaps depend on the effect which the appropriation may have on the owner's interest in the remainder, to increase or diminish its value, in consequence of the use to which that taken is to be devoted, or in consequence of the condition of the condition in which it may leave the remainder in respect to convenience of use . . . .[61]

Justice Cooley elaborated on this rule of damages, noting that those benefits or

damages felt generally by the public were *excluded* from the calculation. He

wrote that "mere incidental injuries or benefits, like those suffered and received by

the community at large, . . . are to be excluded altogether from the computation."[62]

Similarly, in *Constitutional Limitations*, Justice Cooley stated that

> there must be excluded from consideration those benefits which the owner receives only in common with the community at large in consequence of his ownership of other property, and also those incidental injuries to other property, such as would not give to other persons a right to compensation, while allowing those which directly affect the value of the remainder of the land not taken; such as the necessity for increased fencing, and the like.[63]

These are, of course, only secondary authorities concerning the scope of damages

recoverable for a partial taking. However, given the pervasive, perennial influence

---

[60] *Id.* at 338.

[61] 1 Cooley, Constitutional Limitations (1st ed), p 565.

[62] General Principles, pp 341-342 (citations omitted).

[63] Constitutional Limitations, pp 569-570 (citations omitted).

of Justice Cooley's scholarly work on the development of Michigan law, these passages buttress the inference that those sophisticated in the law before 1963 understood that those "general effects" of a taking felt by the public are not compensable in a partial taking.

The reality is that there is negligible direct pre-1963 caselaw or other evidence that allows one to say with conviction that our ratifiers understood that a taking included recovery of "general effects" damages, while there is some evidence pointing to the opposite conclusion. Given the standard of review we must apply in a constitutional challenge to a statute, we conclude that there is insufficient evidence to overcome the presumption of constitutionality.

## V. RESPONSE TO THE DISSENT

The essential challenge of the dissent is that "just compensation" is not a term of art but is an ordinary phrase with a "commonsense" understanding—one that before 1963, Michigan constitutions required a jury of freeholders to determine.[64] The dissent obviously assumes that, because a jury is given the responsibility to apply a legal standard to a set of facts, the jury also has *unfettered* discretion to define that standard. This thesis cannot be squared with how juries function generally in our judicial system and raises the question whether the dissent believes that *any* claim of damages, even the most absurd, could be

---

[64] See also *Silver Creek,* 468 Mich at 375 n 10, and accompanying text (rejecting Justice Weaver's argument that "just compensation" is "obvious on its face").

26

properly excluded from a determination of "just compensation" as a matter of law.[65]

Jurors in our system are instructed on the law; they do not determine the law. Thus, jurors are instructed by the court on the meaning of terms like "reasonable doubt," "duty," and "damages"—to name but a few such terms—all of which can be defined by laymen in a "commonsense way" but have legal meanings that diverge from their plain meaning. Thus, a jury cannot manufacture its own definition of "reasonable doubt" or any of the other similar legal constructs that we expect them to apply in any given case. It is not that juries are intellectually incapable of comprehending these concepts. Rather, we are recognizing that these terms and others have acquired technical, legal meanings over time, which a jury cannot abandon. Such is the case with "just compensation."

While the dissent purports to revere Justice Cooley, it assiduously ignores Justice Cooley on this critical point. He stressed that the "common understanding" of a phrase in some cases *is* its technical meaning:

> [I]t must not be forgotten, in construing our constitutions, that in many particulars they are but the legitimate successors of the great charters of English liberty, whose provisions declaratory of the rights of the subject have acquired a well-understood meaning,

---

[65] Presumably, the dissent's view would preclude instructing a jury that "just compensation" does not include emotional damages. Moreover, the dissent's position cannot be squared with earlier Michigan caselaw that has placed limits on "just compensation" in partial takings, such as *Busch, supra*, and *Watt, supra*.

which the people must be supposed to have had in view in adopting them. We cannot understand these provisions unless we understand their history; and when we find them expressed in technical words, and words of art, we must suppose these words to be employed in their technical sense. When the constitution speaks of an *ex post facto* law, it means a law technically known by that designation; the meaning of the phrase having become defined in the history of constitutional law, and being so familiar to the people that it is not necessary to employ language of a more popular character to designate it. The technical sense in these cases is the sense properly understood, because that is the sense fixed upon the words in legal and constitutional history where they have been employed for the protection of popular rights.[66]

The dissent's position is also internally inconsistent. First, it endorses the "integral and inseparable" method of the Court of Appeals for determining whether "general effects" damages should be compensated, without acknowledging that that test would *not* place the property owner whose property is "separable" from the larger project in the same position he was in prior to the taking. This result is inconsistent with the dissent's guiding principle for awarding "just compensation." Further, the dissent fails to comment on the illogical outcome that results from its position when neighboring property owners suffer the same "general effects" damages but only one has experienced a partial taking. Presumably, only the property owner who suffered the partial taking, of even the smallest portion of property, can be compensated for "general effects" damages while the next door neighbor, suffering the same "general effects" damages, gets

---

[66] Constitutional Limitations, pp 59-60.

28

nothing.[67]  Certainly that result is an affront to principles of common sense and equity, over which the dissent claims exclusive domain, because it leaves one property owner in a better position than his neighbor for a common harm.  Yet that is the result the dissent's position would compel by striking down MCL 213.70(2).

## VI.  CONCLUSION

Our decision is not a reflection of what this Court believes "just compensation" *should* encompass in a partial taking.  Rather, we have been presented with a question of constitutional law requiring that we ascertain the common understanding of those sophisticated in the law before 1963 believed this highly technical term of art to mean.  Having done so, we have discovered no clear indication that "just compensation" included "general effects" damages before the

---

[67] In *Spiek*, 456 Mich at 332-333, a unanimous opinion signed by the dissenting justices in this case, this Court held that "noise, dust, vibration, and fumes experienced by owners of property along an interstate freeway" do not constitute a compensable taking unless "the damages incurred are unique, special, or peculiar, or in some way different in kind or character from the effects incurred by all property owners who reside adjacent to freeways or other busy highways." Damages from the type of harm suffered by all persons adjacent to a highway are not recoverable even when the plaintiff suffers to a greater degree than other landowners; the harm *must* be different in character to be compensable. *Id*. at 339. The dissent would create an exception to *Spiek* and permit a property owner who suffers a partial taking to recover these exact types of "general effects" damages, even though adjacent property owners who have not experienced a partial taking but suffer the same general effects cannot recover damages.  We are not, as the dissent suggests, upset that this outcome would be "unfair." *Post* at 8 n 11. Rather, we are simply noting that the dissent's constitutional exegesis is not self-evident, *a priori*, or intuitive, as it portrays the dissent.  Its analysis, while framed as an appeal to "common sense," is anything but, as the dissenting justice's joinder in *Spiek* amply demonstrates.

29

ratification of our 1963 constitution and thus hold that MCL 213.70(2) is constitutional.  When the constitution places no limit on legislative prerogative, our Legislature is free to act to effectuate the policy of this state.  Consequently, if it is desired that property owners in a partial taking be compensated for "general effects" damages, it is up to our Legislature to enlarge by statute the scope of "just compensation."

We reverse the Court of Appeals judgment and remand to the circuit court for further proceedings consistent with this decision.


Robert P. Young, Jr.
Clifford W. Taylor
Maura D. Corrigan
Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT

MICHIGAN DEPARTMENT OF
TRANSPORTATION,

     Plaintiff-Appellant,

v                                        No. 132983

RODNEY TOMKINS and DARCY
TOMKINS,

     Defendants-Appellees.
_____

WEAVER, J. (*dissenting*).

I dissent from the majority opinion reversing the Court of Appeals judgment and holding that MCL 213.70(2) is constitutional. I would hold that the Legislature, by enacting MCL 213.70(2) and imposing limits on what compensation a property owner could receive upon a partial direct taking, violated the Michigan Constitution's guarantee of "just compensation" for property taken by the government, because the proper process for determining the amount of just compensation is left to a trier of fact. Accordingly, I would affirm the Court of Appeals judgment remanding the case to the circuit court for a trial to determine whether the defendants may receive damages to compensate for the diminution in value of their remaining property after the plaintiff took part of their property to complete a large road construction project.

Furthermore, I dissent with regard to the majority's constitutional analysis of the term "just compensation," because the majority's interpretation of "just compensation" as a legal term of art creates a circular analysis that seemingly abrogates the common understanding of "just compensation" before this Court's first analysis of "just compensation" as a legal term of art in *Silver Creek Drain Dist v Extrusions Div, Inc*, 468 Mich 367; 663 NW2d 436 (2003). I continue to disagree that "just compensation" is a legal term of art that only those learned in the law would have understood when the Michigan Constitution of 1963 was adopted by the people of this state.[1]

## I. FACTS AND PROCEEDINGS

Plaintiff Michigan Department of Transportation (MDOT) initiated this condemnation action under the Uniform Condemnation Procedures Act (UCPA)[2] after the defendants, Rodney and Darcy Tomkins, rejected plaintiff's offer to buy a portion of the Tomkinses' land adjacent to Kenowa Avenue in Kent County. Plaintiff sought to buy the strip of land for use in extending Kenowa Avenue as an overpass over the new M-6 highway that plaintiff was constructing near defendants' property.

Experts for both plaintiff and defendants agreed that the market value of the strip of land at issue was $3,800. The defendants sought additional compensation

---

[1] See my partial dissent in *Silver Creek*, 468 Mich at 382.

[2] MCL 213.51 *et seq.*

2

of $48,200 for the diminution in value of their remaining parcel of land, caused by negative effects arising from the "dust, dirt, noise, vibration, and smell" of the nearby M-6 highway.

Plaintiff filed a motion in limine, arguing that evidence of the general effects of the M-6 highway project was precluded under MCL 213.70(2). Plaintiff also filed, in the alternative, a motion for summary disposition under MCR 2.116(C)(8), arguing that a claim for general-effects damages in a condemnation action is not a claim for which relief may be granted. The trial court granted plaintiff's motion in limine to exclude the evidence of general effects in the calculation of the defendants' just compensation.

Plaintiff filed a motion for summary disposition under MCR 2.116(C)(10). The defendants stipulated the entry of a final judgment for the value of the land taken, $3,800, plus statutory interest, expert fees, and attorney fees.

The Court of Appeals reversed the trial court's decision to grant plaintiff's motion in limine.[3] The Court of Appeals held that all relevant factors must be taken into account when determining the value of just compensation under the Michigan Constitution and, thus, it concluded that the preclusion of general-effects damages under MCL 213.70(2) violated the Michigan Constitution. The Court stated that in a partial taking "[w]here the use of the land taken constitutes an

---

[3] *Dep't of Transportation v Tomkins*, 270 Mich App 153; 715 NW2d 363 (2006).

3

integral and inseparable part of a single use to which the land taken and other adjoining land is put, the effect of the whole improvement is properly to be considered in estimating the depreciation in value of the remaining land."[4] While retaining jurisdiction, the Court of Appeals remanded the case to the trial court for the court to determine whether there was an issue of fact with regard to whether the Kenowa Avenue overpass, for which the defendants' strip of land was taken, was "integral [to] and inseparable" from the M-6 construction project. On remand, the trial court concluded that there was an issue of fact. Thereafter, the Court of Appeals again remanded the case to the trial court to determine defendants' just compensation, taking into account all factors relevant to the market value of defendants' remaining property.

Plaintiff sought leave to appeal in this Court, and this Court granted leave.[5]

## II. STANDARD OF REVIEW

Questions concerning the constitutionality of a statutory provision are subject to review de novo. *Tolksdorf v Griffith*, 464 Mich 1, 5; 626 NW2d 163 (2001).

---

[4] *Id*. at 168, quoting *Andrews v Cox*, 129 Conn 475, 482; 29 A2d 587 (1942).

[5] 478 Mich 903 (2007).

4

III.  THE CONSTITUTIONALITY OF MCL 213.70(2)

Article 10, § 2 of the 1963 Michigan Constitution secures the right of property owners to just compensation when the government takes land for public use.  At the time of the instant condemnation suit, Const 1963, art 10, § 2 provided:[6]

> Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law.  Compensation shall be determined in proceedings in a court of record.

This Court has held on a number of occasions that the just compensation provided in Const 1963, art 10, § 2 "must put the party injured in as good position as he would have been if the injury had not occurred."  *State Hwy Comm'r v Eilender*, 362 Mich 697, 699; 108 NW2d 755 (1961).[7]

In the instant case, plaintiff MDOT sought to directly take part of the defendants' property.  In cases involving claims of partial taking, this Court has held that "just compensation" entitles the property owner to direct compensation for the value of the property taken, and consequential damages for the diminution

---

[6] Const 1963, art 10, § 2 has since been amended by ballot initiative in 2006, but that amendment is not at issue in this case.

[7] See also *Wayne Co v Britton Trust*, 454 Mich 608, 622; 563 NW2d 674 (1997); *In re Edward J Jeffries Homes Housing Project*, 306 Mich 638, 650; 11 NW2d 272 (1943); *In re Widening of Bagley Ave*, 248 Mich 1, 5; 226 NW 688 (1929); *Fitzsimons & Galvin, Inc v Rogers*, 243 Mich 649, 664; 220 NW 881 (1928).

5

in value of the remainder of the property owner's property.[8]  "[A]ny evidence that would tend to affect the market value of the property as of the date of condemnation is relevant." *Dep't of Transportation v VanElslander*, 460 Mich 127, 130; 594 NW2d 841 (1997). The determination of value is not a matter of formulas or artificial rules, but of sound judgment and discretion considering all the relevant facts in a particular case.[9]

The UCPA prescribes the manner in which just compensation is "first made or secured" pursuant to Const 1963, art 10, § 2.  Section 20(2) of the UCPA, MCL 213.70(2), precludes property owners from including the general effects of a taking in the calculation of just compensation.  The statute provides:

> The general effects of a project for which property is taken, whether actual or anticipated, that in varying degrees are experienced by the general public or by property owners from whom no property is taken, shall not be considered in determining just compensation.  A special effect of the project on the owner's property that, standing alone, would constitute a taking of private property under section 2 of article X of the state constitution of 1963 shall be considered in determining just compensation.  To the extent that the detrimental effects of a project are considered to determine just compensation, they may be offset by consideration of the beneficial effects of the project.

The Court of Appeals correctly held that MCL 213.70(2) violated Const 1963, art 10, § 2.

---

[8] *Johnstone v Detroit, G H & M R Co*, 245 Mich 65, 81; 222 NW 325 (1928); *In re Widening of Fulton Street*, 248 Mich 13, 20-21; 226 NW 690 (1929).

[9] *In re Widening of Bagley Ave*, 248 Mich at 4.

Article 10, § 2 guarantees that a landowner will receive "just compensation" for a taking of that landowner's property. MCL 213.70(2), by partially limiting the compensation a landowner may receive in certain situations, decreases the amount of just compensation for landowners and, thus, it conflicts with the mandate of art 10, § 2 that "[c]ompensation shall be determined in proceedings in a court of record." The Legislature does not have the authority to take away, or limit, the right of just compensation that the Constitution has guaranteed to landowners.

The majority errs by ruling that MCL 213.70(2) is constitutional. The majority does not cite any authority the Legislature has to limit "just compensation." The majority states that acts of the Legislature are presumed constitutional. Instead of examining the text of the Constitution other than the words "just compensation," the majority looks only to pre-1963 cases interpreting "just compensation." By basing its opinion on the lack of precedent that would conflict with MCL 213.70(2), the majority ignores the language in the Constitution stating that the amount of compensation to be paid is a matter for the courts to decide. Furthermore, the majority disregards this Court's precedent stating that just compensation is designed to return landowners to the position they were in before the taking took place.

With regard to the Court of Appeals remand order to the trial court to determine whether the Kenowa Avenue overpass was "integral [to] and inseparable" from the M-6 project, the Court of Appeals correctly decided the

7

issue. The "integral and inseparable" method, adopted from the Connecticut Supreme Court's *Andrews* decision,[10] is a method of "sound judgment and discretion" that allows owners of land that was directly, but partially, taken to prove that their remaining property suffered diminution in value as a result of the taking.[11]

---

[10] See n 4, *supra*.

[11] The "integral and inseparable" test offers courts a method of sound judgment and discretion in determining who may collect general-effects damages for partial takings because it ensures that compensation will only be awarded when a court finds that the general effects felt by the landowner arose from the taking of the landowner's property. Under the test, if the land taken was separable from the larger project, and thus did not contribute to the effects felt by the owner, then the owner will not be compensated for those effects not directly related to the taking. Also, while the majority may claim it unfair that a landowner whose property is partially taken may recover general-effects damages while neighboring landowners, whose property remains intact, will not recover the damages even when the neighbors feel the same or worse general effects, the test does not involve a question of fairness, but rather a determination of who may recover for the general effects under the Constitution. The Michigan Constitution draws a line by only providing that just compensation be awarded to the landowners whose property was taken. There is no mention of compensation for landowners whose property was not taken by the government. Furthermore, the "integral and inseparable" test does not create a taking claim where none existed. As this Court held in *Spiek v Dep't of Transportation*, 456 Mich 331; 572 NW2d 201 (1998), general effects cannot be used as the basis for a claim of a taking. However, once a direct taking has been established, just compensation is required to return the injured landowner to the position he or she enjoyed before the taking. In sum, the "integral and inseparable" test allows a jury to follow the Constitution by awarding just compensation to those whose property was partially and directly taken, and the test allows the jury, in determining the amount of just compensation, to award damages that arise from the taking, in order to return the landowner to the same position the landowner enjoyed before the taking.

In this case, the proper question in determining the amount of money required to return the defendants to their position before the taking is whether the project for which the defendants' land was taken contributed to the diminution of value of the remainder of the defendants' property.

Accordingly, I vote to affirm the Court of Appeals decision remanding the case for trial, and I support the reasons for the Court of Appeals decision.

IV. "JUST COMPENSATION" AS A TERM OF ART

In *Silver Creek*, a majority of justices held that the Constitution's term "just compensation" was a legal term of art that only those learned in the law could have understood when the Michigan Constitution was adopted in 1963.[12] I dissented from that holding because it wrongly limited the analysis of the term "just compensation" to the understanding of those learned in the law, even though the constitutions throughout Michigan's history left the determination of just compensation to other "freeholders" (landowners).[13] The majority's constitutional analysis in this case reveals the flaws inherent in an analysis limited to the understanding of those learned in the law.

The majority, sticking to the "learned in the law" form of analysis, looks only to past cases interpreting the "just compensation" provision of the Michigan

---

[12] 468 Mich at 375-376.

[13] See my discussion of "just compensation" in previous constitutions, *id*. at 385-386.

9

Constitution. The majority holds that, because this Court had not interpreted "just compensation" with regard to "general effects" damages, a person sophisticated in the law in 1963 would not have understood "just compensation" to include "general effects" damages. The majority then reasons that, because a person sophisticated in the law in 1963 would not have understood "just compensation" to include "general effects" damages, the Constitution's term "just compensation" does not include such damages. Thus, the majority concludes that the provision in MCL 213.70(2) precluding general-effects damages does not conflict with the Constitution and the statute is constitutional. I find the majority's reasoning to be deeply flawed because the majority only looks for a pre-1963 case on point, and when it finds that there is no case on point, it ignores the plain language of the Constitution and marginalizes other cases interpreting "just compensation."

In my *Silver Creek* dissent, I noted the long-established condemnation rule that "'[j]ust compensation' has long been readily and reasonably understood to be that amount of money that puts the property owner whose property is taken in as good, but not better, a financial position after the taking as the property owner enjoyed before the taking."[14] In the instant case, the majority disregards this rule because this Court had never specifically used it with regard to "general effects" damages. However, common sense dictates that if compensation for the "general

---

[14] 468 Mich at 384-385, citing *Britton Trust*, 454 Mich at 622; *In re Edward J Jeffries Homes Housing Project*, 306 Mich at 650; and *In re Widening of Bagley Ave*, 248 Mich at 5.

10

effects" damages would serve to place the landowner in the position he or she was in before the taking, then "general effects" damages would be includable in "just compensation." But the majority's "legal term of art" analysis only looks to the understanding of those "learned in the law." It does not look to the "common" understanding of the people who ratified the Constitution.

Rather than adhere to the majority's "legal term of art" analysis of "just compensation," this Court should return to Michigan's longstanding rule for interpreting the Michigan Constitution, as described by Justice Cooley, under which

> [t]he interpretation that should be given [the Constitution] is that which reasonable minds, the great mass of the people themselves, would give it. ". . . [T]he intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding . . . ."[15]

As I stated in my partial dissent in *Silver Creek*, 468 Mich at 383, "this Court should not engage in a method of constitutional construction that unnecessarily sidesteps the long-established primary rule of constitutional construction." Accordingly, I continue to dissent from the majority's "legal term of art" analysis of "just compensation."

---

[15] *Traverse City School Dist v Attorney General*, 384 Mich 390, 405; 185 NW2d 9 (1971), quoting Cooley, Constitutional Limitations, p 81 (emphasis in *Traverse City*).

## V. CONCLUSION

I dissent from the majority opinion reversing the Court of Appeals judgment and holding that MCL 213.70(2) is constitutional. I would hold that the Legislature, by enacting MCL 213.70(2) and imposing limits on what compensation a property owner could receive upon a partial direct taking, violated the Michigan Constitution's guarantee of just compensation for property taken by the government, because the proper process for determining the amount of just compensation is left to a trier of fact. Accordingly, I would affirm the Court of Appeals judgment remanding the case to the trial court.

Furthermore, I dissent with regard to the majority's constitutional analysis of the term "just compensation," because the majority's interpretation of "just compensation" as a legal term of art creates a circular analysis that abrogates the common understanding of just compensation before this Court's first analysis of "just compensation" as a legal term of art in *Silver Creek*.

Elizabeth A. Weaver
Michael F. Cavanagh
Marilyn Kelly

12