*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MUSKEGON COUNTY and HEALTHWEST,

        Plaintiffs-Appellants,

v

STATE OF MICHIGAN, DEPARTMENT OF
HEALTH AND HUMAN SERVICES, and
DIRECTOR OF DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

        Defendants-Appellees.

FOR PUBLICATION
March 9, 2023
9:05 a.m.

No. 360007
Court of Claims
LC No. 20-000042-MB

Before: JANSEN, P.J., and REDFORD and YATES, JJ.

YATES, J.

Plaintiffs, Muskegon County and its agency, HealthWest, argue on appeal that HealthWest should receive payment from defendants, the State of Michigan and the Department of Health and Human Services (DHHS), for Medicaid-eligible mental-health services under MCL 330.1308 and MCL 330.1310, Const 1963, art 8, § 8, and Const 1963, art 9, § 29. The DHHS channels Medicaid funds for mental-health services to prepaid inpatient health plans (PIHPs), and the PIHPs contract with community mental health services programs (CMHSPs), such as HealthWest, for the services. Lakeshore Regional Entity (LRE)—the PIHP that contracted with HealthWest—purportedly failed to reimburse HealthWest for more than $12 million in services funded by Medicaid, so plaintiffs filed this suit demanding reimbursement from the DHHS for the Medicaid services. But the DHHS disclaimed liability, contending that it bore no responsibility to pay HealthWest for those services, so HealthWest had to seek redress from its PIHP, i.e., LRE. The Court of Claims agreed with the DHHS's analysis, and so do we, so we shall affirm.

## I. FACTUAL BACKGROUND

The background of this dispute begins on common ground. According to MCL 400.109f, the DHHS, acting through contractual arrangements, channels state and federal Medicaid funding to PIHPs for the provision, under managed-care plans, of certain types of mental-health services. The PIHPs contract with CMHSPs, which furnish the hands-on services. CMHSPs have no direct

contractual relationship with the DHHS. Instead, the DHHS provides oversight of PIHPs to ensure that they meet their obligations to provide efficient services. Here, LRE—the PIHP that contracted with HealthWest—had been spending its reserve funds, so the DHHS issued a notice of contract cancellation to LRE on June 28, 2019. But their contractual relationship was extended on a month-to-month basis, so the DHHS continued to provide funding to LRE for Medicaid services.

To complicate matters, HealthWest provided some non-Medicaid-funded services as well as traditional Medicaid-funded services, and payment for the non-Medicaid-funded services came, in part, directly from the DHHS and out of " 'General Funds.' " That occurred because the DHHS is bound by Michigan law to pay for 90 percent of the non-Medicaid-funded services. Specifically, MCL 330.1308 and MCL 330.1310 contemplate such funding. Under MCL 330.1308(1), subject to some exceptions, "the state shall pay 90% of the annual net cost of a community mental health services program that is established and administered in accordance with chapter 2." Additionally, MCL 330.1310 explains that, for the purpose of MCL 330.1308, "net cost" means:

> (a) For a community mental health services program expenditures eligible for state financial support and approved by the department that are not otherwise paid for by federal funds, state funds, or reimbursements from persons and insurers who are financially liable for the cost of services.

> (b) Except as provided in subdivision (a), the total of all community mental health services program expenditures eligible for state financial support and approved by the department that are not otherwise paid for by federal funds or state funds.

The dispute here turns on whether the 90-percent funding obligation prescribed by MCL 330.1308 applies to expenditures for services funded by Medicaid. On March 27, 2020, plaintiffs filed a four-count complaint against defendants and LRE, alleging that LRE had improperly failed to reimburse HealthWest for more than $12 million for Medicaid-funded services.[1] The complaint alleged that the county had been forced to use other resources to cover the shortfall, and plaintiffs asserted that the DHHS had violated its obligation under MCL 330.1308 to pay for 90 percent of the annual net cost of a CMHSP, i.e., HealthWest. But plaintiffs acknowledged that the contract between the DHHS and LRE says that if that contract is cancelled, "[p]ayment for any and all valid claims for services rendered to covered recipients prior to the effective end date shall be the PIHP's responsibility, and not the responsibility of the MDHHS." Nevertheless, plaintiffs insist that they should receive money damages, declaratory and equitable relief, and mandamus.

Defendants sought summary disposition, asserting that plaintiffs' claims were time-barred, that the demand for money damages was barred by governmental immunity, that plaintiffs lacked standing, that plaintiffs failed to state any claim upon which relief could be granted, and that there was no genuine issue of material fact. In awarding summary disposition to defendants, the Court of Claims focused upon the absence of a viable claim and the lack of a genuine issue of material fact. Thus, on appeal, we shall not consider timeliness, standing, or governmental immunity. The

---

[1] Plaintiffs named LRE as a defendant in this case, but the Court of Claims dismissed LRE for lack of subject-matter jurisdiction. As a result, plaintiffs had to file a separate suit against LRE.

crux of the argument on appeal, therefore, is whether plaintiffs can establish a potential violation of MCL 330.1308 and MCL 330.1310, which seemingly pertain to non-Medicaid-funded services, or a probable violation of any constitutional guarantee, such as Const 1963, art 8, § 8.

## II. LEGAL ANALYSIS

Defendants requested summary disposition under MCR 2.116(C)(8) and (10), but the Court of Claims "relied on the parties' documentary evidence[,]" so we shall treat the award of summary disposition as relief pursuant to MCR 2.116(C)(10). *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 207; 920 NW2d 148 (2018). "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When addressing a motion under MCR 2.116(C)(10), "a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id.* at 160. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id.* " 'A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ.' " *Id.* Much of the dispute turns upon matters of statutory and constitutional construction. The trial court's interpretation of statutes and constitutional provisions is reviewed de novo. *Mich Dep't of Transp v Tomkins*, 481 Mich 184, 190; 749 NW2d 716 (2008).

## A. STATUTORY ARGUMENTS

Plaintiffs primarily rely upon statutory authority to support their claims for reimbursement from the DHHS for Medicaid-funded services. Plaintiffs refer to MCL 330.1308(1), which states that, "subject to the constraint of funds actually appropriated by the legislature for such purpose, the state shall pay 90% of the annual net cost of a community mental health services program that is established and administered in accordance with chapter 2." But MCL 330.1310 defines "net cost" as follows:

> (a) For a community mental health services program expenditures eligible for state financial support and approved by the department that are not otherwise paid for by federal funds, state funds, or reimbursements from persons and insurers who are financially liable for the cost of services.

> (b) Except as provided in subdivision (a), the total of all community mental health services program expenditures eligible for state financial support and approved by the department that are not otherwise paid for by federal funds or state funds.

The DHHS acknowledges its obligation under those statutes to furnish funding to HealthWest for the non-Medicaid-funded services that HealthWest provides, but the DHHS insists that the statutes cited by plaintiffs do not obligate the DHHS to reimburse HealthWest for the payments it demands for Medicaid-funded services that it provided. According to the DHHS, that obligation rests solely with LRE, which has not paid HealthWest.

Under MCL 330.1310, the Medicaid services that HealthWest provides are "otherwise paid for" with funding distributed by the DHHS through LRE for the managed-care system. Plaintiffs recognize that CMHSPs obtain Medicaid payments entirely from PIHPs. In addition, to the extent

a PIHP incurs liabilities, there is a shared risk between the PIHP and the DHHS. But a "net cost" involves expenditures "approved by the department[.]" MCL 330.1310. Plaintiffs argue that their Medicaid expenditures are always approved by the DHHS because CMHSPs receive funds ahead of time from the PIHPs such as LRE. But MCL 330.1310(b) speaks of approval *by the department*, not by the PIHP. Plaintiffs insist that DHHS approval is implicit because, according to deposition testimony, payment is always eventually made on Medicaid claims, but the very testimony cited by plaintiffs also reveals that payment for shortfalls is sometimes made with money from the PIHP in accordance with the risk-sharing agreement between the PIHP and the DHHS.[2]

Plaintiffs contend that MCL 330.1240 supports their interpretation of MCL 330.1308 and MCL 330.1310. Under MCL 330.1240, "[a]ll expenditures by a community mental health services program necessary to execute the program shall be eligible for state financial support, except those excluded under" MCL 330.1242. And MCL 330.1240 further states that "[e]xpenditures necessary to carry out the responsibilities and duties of a community mental health services program include expenditures for staff training and staff education and for mental health research when those expenditures are necessary or appropriate to the execution of the program." But reliance on MCL 330.1240 is not persuasive because even if an expenditure is "eligible for state financial support," that eligibility does not establish that the expenditure satisfies the requirements of MCL 330.1310. Indeed, MCL 330.1310(b) defining "net cost" excludes from that designation expenditures "that are not otherwise paid for by federal funds or state funds." All of the Medicaid services for which HealthWest seeks reimbursement from the DHHS are "paid for by federal funds and state funds" that flow through LRE. Thus, plaintiffs' statutory arguments for reimbursement are unavailing.

## B. CONSTITUTIONAL ARGUMENTS

Plaintiffs contend that the DHHS violated two provisions of the Michigan Constitution of 1963—Const 1963, art 8, § 8 and Const 1963, art 9, § 29—by refusing to provide reimbursement to HealthWest for Medicaid-funded services. According to Const 1963, art 8, § 8, "[i]nstitutions, programs and services for the care, treatment, education, or rehabilitation of those inhabitants who are physically, mentally or otherwise seriously disabled shall always be fostered and supported." That hortatory pronouncement is not self-executing, though, because it "depend[s] upon statutory implementation." *Ferency v Secretary of State*, 409 Mich 569, 591; 297 NW2d 544 (1980). Our Supreme Court has explained and we have reaffirmed that a constitutional provision " 'is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.' " *Rusha v Dep't of Corrections*, 307 Mich App 300, 308; 859 NW2d 735 (2014), quoting *Thompson v Secretary of State*, 192 Mich 512, 520; 159 NW2d 65 (1916). By enacting the Mental Health Code, MCL 330.1001 *et seq.*, our Legislature gave the force of law to the principles articulated in Const 1963, art 8, § 8. Thus, plaintiffs cannot present a freestanding claim under Const 1963, art 8, § 8. Instead, they must style their claim as a violation of the Mental Health Code, but they cannot do so because, as we have already explained, MCL 330.1308 and MCL 330.1310 afford them no succor.

---

[2] At oral argument, counsel for the DHHS indicated that it has a cost-settlement process with PIHPs such as LRE to address situations in which CMHSPs are undercompensated by the capitated rate for services. That process, however, only involves discussions between PIHPs and the DHHS.

Plaintiffs' reliance upon Const 1963, art 9, § 29 fares no better. That provision—ordinarily described as part of the Headlee Amendment—prohibits the State of Michigan "from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law." Const 1963, art 9, § 29. In addition, that provision expressly mandates that "[a] new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs." *Id.* But neither the State of Michigan nor the DHHS required plaintiffs to provide new or increased services when money stopped flowing through LRE. In fact, the State of Michigan and the DHHS channeled Medicaid funds at the same level to PIHPs in spite of their concerns about LRE, but LRE failed to compensate HealthWest for its Medicaid-funded services at the traditional rates and pace.[3] Thus, plaintiffs have failed to show that they were the victims of any constitutional violation committed by either the State of Michigan or the DHHS.

## C. CONTRACT CLAIMS AND MANDAMUS

No contractual relationship for Medicaid-funded services exists between plaintiffs and the State of Michigan or the DHHS, but plaintiffs contend that HealthWest is a third-party beneficiary of the bilateral contract between the DHHS and LRE and, in that capacity, plaintiffs are entitled to have section 16.0 of that contract declared void. Section 16.0 provides that "[p]ayment for any and all valid claims for services rendered to covered recipients prior to the effective end date shall be the PIHP's responsibility, and not the responsibility of the MDHHS." Under Michigan law, an entity " 'is a third-party beneficiary of a contract only when the promisor undertakes an obligation "directly" to or for the' " entity. *Shay v Aldrich*, 487 Mich 648, 663; 790 NW2d 629 (2010). The language of section 16.0 makes clear that plaintiffs are *not* third-party beneficiaries to the contract between the DHHS and LRE, at least insofar as plaintiffs assert a right to payment from the DHHS. Moreover, plaintiffs' argument is entirely predicated on their interpretation of MCL 330.1308 and MCL 330.1310, which we have rejected. As plaintiffs put it, because "the State is liable for the unreimbursed mandated Medicaid-eligible mental health services under MCL 330.1308 and MCL 330.1310[,]" HealthWest "is entitled to a declaratory judgment that the clause in the contract between the State and LRE is contrary to public policy because it abrogated the State's duty to pay under MCL 330.1308." Because plaintiffs' interpretation of MCL 330.1308 and MCL 330.1310 is incorrect, plaintiffs' argument to void section 16.0 is necessarily unavailing.

---

[3] Plaintiffs note that CMHSPs such as HealthWest are bound by MCL 330.1208(4), which requires that "[a]n individual shall not be denied a service because an individual who is financially liable is unable to pay for the service." They contend that this statute is an unfunded mandate under the Headlee Amendment. But a state appropriation was made and disbursed to cover all of the costs at issue in this litigation through the appropriations for PIHPs. Plaintiffs have not established that the payments the DHHS made to LRE were insufficient. Indeed, plaintiffs concede that "the State of Michigan has appropriated sufficient funds for the purpose of paying for community mental health services programs. . . . No party has argued otherwise."

-5-

We reach the very same conclusion for the very same reason in addressing the mandamus request from plaintiffs. That is, plaintiffs' argument for mandamus is based upon their proposed interpretation of MCL 330.1308 and MCL 330.1310, which we have rejected, so their request for mandamus relief is fatally flawed. "Where an official has a clear legal duty to act and fails to do so, the appropriate remedy is an order of mandamus." *Jones v Dep't of Corrections*, 468 Mich 646, 658; 664 NW2d 717 (2003). "An executive agency may have a clear legal duty when there is a statute that plainly instructs that agency to perform a certain action." *Barrow v Wayne Co Bd of Canvassers*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358669); slip op at 6. Here, conversely, the statutes cited by plaintiffs manifestly do *not* impose a duty upon the DHHS to provide the reimbursement demanded by plaintiffs for Medicaid-funded services, so mandamus is not available to force the DHHS to reimburse plaintiffs.

Plaintiffs also assert that mandamus is warranted under Const 1963, art 8, § 8, which states that "[i]nstitutions, programs and services for the care, treatment, education, or rehabilitation of those inhabitants who are physically, mentally or otherwise seriously disabled shall always be fostered and supported." As we have already ruled, however, that constitutional provision is not self-executing, so it imposes no clear legal duty to act upon the State of Michigan or the DHHS. Accordingly, plaintiffs have no right to mandamus based upon Const 1963, art 8, § 8. Indeed, if we were to adopt plaintiffs' proposed approach, we would be obligating the State of Michigan and the DHHS to pay PIHPs (such as LRE) in the current Medicaid managed-care system and to pay individual claims directly to CMHSPs (such as HealthWest) as in the previous Medicaid fee-for-service structure. That approach is neither logical nor consistent with our constitution and statutes. Accordingly, we reject plaintiffs' proposed approach.

Affirmed.

/s/ Christopher P. Yates
/s/ Kathleen Jansen
/s/ James Robert Redford

-6-